IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.A. a minor by and through his parents, and guardian ad litem, L.A. and M.A.<br><br>Plaintiff,<br><br>vs.<br><br>TULARE COUNTY OFFICE OF EDUCATION and CALIFORNIA DEPARTMENT OF EDUCATION,<br><br>Defendants.<br>_____/ | CASE NO. CV F 08-1215 LJO GSA<br><br>**ORDER ON DEFENDANTS' F.R.Civ.P. 12(b) MOTION TO DISMISS**<br>(Doc. 20) |

**INTRODUCTION**

Plaintiff S.A. ("Student"), a minor, seeks under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, et seq., to reverse decisions of defendant California Department of Education ("CDE") regarding defendant Tulare County Office of Education's ("Tulare Education's") alleged failure to produce Student's requested educational records. CDE and Tulare Ed seek to dismiss Student's claims for failure to exhaust administrative remedies and as unrecognized under IDEA. Student responds that he is entitled to request this Court to seek reversal of CDE decisions. This Court considered CDE and Tulare Education's F.R.Civ.P. 12(b)(1) and F.R.Civ.P. 12(b)(6) motion to dismiss on the record, pursuant to Local Rule 78-230(h). For the reasons discussed below, this Court DENIES CDE and Tulare Education F.R.Civ.P. 12(b)(1) and 12(b)(6) dismissal.

# BACKGROUND[1]

## Request For Student's Records

Student is a 10-year old boy and lives with his parents ("parents") in the Exeter Union Elementary School District ("Exeter District"). The Exeter District is part of the Tulare County/District Special Education Local Plan Area ("local plan area"). Tulare Education is the administrative head of the local plan area and provides special education services in 34 small school districts. Student has received special education services since the 2001-2002 school year due to Student's autism and speech and language delay.

Student's counsel sent a July 10, 2007 letter to Tulare Education to request all email sent or received by Tulare Education "concerning or personally identifying Student." Tulare Education's July 17, 2007 reply indicated that Tulare Education was checking all emails with staff members and would likely provide requested information prior to July 27, 2007.

Student's counsel sent a July 23, 2007 follow-up letter to request Tulare Education to provide the electronic records in "native file format," that is the electronic version used to prepare the document. On July 25, 2007, Student's counsel received Tulare Education's letter that the requested records "could not be sent electronically as they had been 'purged' and made only available as hard copies within the file." Tulare Education provided "a small stack of documents containing e-mails from 2007 and one from 2006."

Student's mother sent an August 13, 2007 email to again request Tulare Education that all electronic records regarding Student be forwarded as emails or placed on a compact disc in native file format. Tulare Education did not respond to the request.

## Student's CDE Complaint And Reconsideration Request

Student filed a February 6, 2008 compliance complaint for CDE to order Tulare Education to provide Student a complete copy of Student's "educational records," including all emails concerning or identifying Student and pursuant to the July 10, 2007 request of Student's counsel. Student further requested a CDE finding that the requested records were destroyed without parental notification or

---

[1] The factual background is derived generally from Student's operative first amended complaint ("FAC").

2

1  consent if Tulare Education could not produce the requested "education records."

2  CDE's April 1, 2008 compliance complaint report found Tulare Education had violated California Education Code section 56504 because Tulare Education took more than five business days to turn over the small stack of documents. CDE recognized that Student requested a remedy under IDEA and state law counterpart Family Educational Rights Privacy Act ("FERPA"). Student characterizes as erroneous CDE's finding that Tulare Education was not required to notify parents prior to "purging" emails related to Student on grounds that the emails are not "educational records" to be maintained under 34 C.F.R. § 99.6.

Student filed a May 7, 2008 request for clarification and reconsideration to request CDE to:

1. Clarify whether CDE determined that Tulare Education provided all requested records given that only 2007 emails and one from 2006 were produced;

2. Investigate and mandate corrective action to provide Student all records which Tulare Education should have produced;

3. Determine whether Tulare Education was unable to produce additional records due to their destruction;

4. Order Tulare Education, if electronic records were destroyed, to provide a declaration that emails were deleted from individual computers and email base and Tulare Education's computer system prior to Student's initial July 10, 2007 request to prevent their retrieval; and

5. Reconsider CDE's finding that Tulare Education committed no violation by failure "to inform Parents when Student's personally identifiable information collected or maintained was no longer needed to provide educational services to Student."

CDE's May 19, 2008 reconsideration report found no inconsistencies with it original compliance complaint report. The reconsideration report stated: "Any further disagreement with the report can be appropriately addressed in a court of competent jurisdiction."

## Attorney Fees Request

Student's counsel sent August 22, 2008 correspondence to Tulare Education to seek reimbursement of $5,462.64 attorney fees for "the successful compliance complaint." The September

19, 2008 response of Tulare Education's counsel cited concerns and refused reimbursement. Student's counsel sent September 24, 2008 correspondence to reiterate his attorney fees demand.

### Student's Claims

On August 15, 2008, Student filed this action and proceeds on his FAC to allege:

1. A first cause of action that Tulare Education failed to provide Student's complete "educational record" in violation of federal and state law by failing to provide all emails regarding Student and destroying them without parental notification or consent in violation of 34 C.F.R. § 300.624;

2. A second cause of action to: (a) reverse CDE findings that emails are not "educational records" to be maintained by the educational agency and that Tulare Education was in compliance; and (b) require CDE to take "appropriate corrective actions"; and

3. A third cause of action to reimburse attorney fees not less than $5,462.64 for "successful prosecution of the compliance complaint."

The FAC seeks this Court's:

1. Reversal of CDE's decision;
2. Findings that Tulare Education violated federal and state laws to maintain and to provide Student's "educational records" and that emails not produced by Tulare Education were Student's "educational records" to be "maintained" under 34 C.F.R. § 99.6;
3. Order that Tulare Education provide Student's existing records which should have been produced pursuant to the initial July 10, 2007 request;
4. Order that Tulare Education notify parents when it intends to destroy Student's "educational records"; and
5. Award of $5,462.64 attorney fees for "successful prosecution of the compliance complaint."

### DISCUSSION

### IDEA Framework

Prior to addressing CDE and Tulare Education's challenges to the FAC, this Court will review IDEA's framework. IDEA is Spending Clause legislation. *Virginia Office of Protection and Advocacy*

*v. Virginia, Dept. of Educ.,* 262 F.Supp.2d 648, 658 (E.D.Va. 2003). 20 U.S.C. § 1411(a)(1) directs the Secretary of Education to make grants to States "to assist them to provide special education and related services to children with disabilities in accordance to this subchapter." As a federal spending program, IDEA operates "much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions." *Pennhurst State Sch. & Hosp. v. Halderman ("Pennhurst I")*, 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). "Consequently, under the IDEA a state is eligible for financial assistance only if it first 'demonstrates to the satisfaction of the Secretary" that, among other things, "children with disabilities and their parents are afforded the procedural safeguards required by section 1415.'" *Virginia Office of Protection,* 262 F.Supp.2d 648, 658-659 (quoting 20 U.S.C. § 1412(a)(6)(A)).

IDEA and its regulations 34 C.F.R. §§ 300.1, et seq., provide procedural and substantive standards to educate students with disabilities. 20 U.S.C. § 1401(d). IDEA requires a state, to receive federal financial assistance, to effectuate a policy to assure disabled children a free appropriate public education ("FAPE"). 20 U.S.C. § 1412(a)(1). A FAPE requires special education and related services at public expense, under public supervision, and with no charge to the student or parents. 20 U.S.C. §§ 1401(9) and (29).

IDEA requires a participating state to submit to the U.S. Department of Education a plan of policies, procedures and program descriptions. 20 U.S.C. § 1412(a). California participates in IDEA, adopted a federally-approved state plan, and enacted statutes and regulations to comply with federal requirements. *See* Cal. Ed. Code, §§ 56000, et seq.; Cal. Code Regs., Tit. 5, §§ 3000, et seq. Each disabled student's instruction is based on an Individualized Education Program ("IEP"), pursuant to 20 U.S.C. § 1414(d). Parents are entitled to file a complaint with CDE concerning matters of identification, evaluation or educational placement of a child or FAPE provision. 20 U.S.C. § 1415(b)(6); Cal. Code Regs., Tit. 5, §§ 4600, et seq.

Under California's plan, the "district, special education local plan area, or county office of education" of the child's residence is responsible to identify disabled children, to assess suspected disability, to determine educational placements and related services through an IEP, and to provide needed education and related services. Cal. Educ. Code, §§ 56300, 56302, 56340, 56344(b). CDE notes

its "general duty to assure that local entities have a system in place, and the duty to resolve compliance complaints." CDE points to the absence of duty to provide "directly" services to disabled children or to "satisfy any other related obligation of the local school district with regard to the IDEA."

As to a proposal or refusal to initiate or change the identification, evaluation or educational placement of a child, or the provision of a FAPE, parents may request an administrative "due process hearing" before an independent and impartial hearing officer to challenge the result. 20 U.S.C. § 1415(f); Cal. Ed. Code, §§ 56501, et seq.; 34 C.F.R. §§ 300.506, 300.507, 300.508. CDE is required to enter into an interagency agreement with another state agency or contract with a nonprofit organization to provide the independent and impartial process. Cal. Ed. Code, § 56504.5. Pursuant to an interagency agreement, the Office of Administrative Hearings conducts the due process hearings and renders final administrative decisions. Cal. Ed. Code, § 56505(h). A party subject to an unfavorable final administrative decision may seek de novo review by a court of competent jurisdiction. 20 U.S.C. § 1415(i)(2)(A); Cal. Ed. Code, § 56505(k).

CDE and Tulare Education note that state complaint resolution procedures ("CRPs") are prescribed by 34 C.F.R. §§ 300.151-300.153, which do not indicate that a party aggrieved by the procedures is entitled to bring a civil action. CDE and Tulare Education characterize CRPs as less formal and adversarial than a due process hearing. CDE and Tulare Education further note that 34 C.F.R. § 300.516 provides the right to bring the civil action but that 34 C.F.R. §§ 300.151-300.153 are not included in the definition of proceedings under IDEA and its regulations that invoke a private right of action.

### CDE and Tulare Education's F.R.Civ.P. 12(b)(1) Motion

CDE and Tulare Education's initial challenge is that Student disguises as federal IDEA claims actual state FERPA claims "for which there is an administrative remedy that plaintiff has failed to exhaust." CDE and Tulare Education accuse Student of "attempting to directly appeal to a federal district court a determination made through CDE's complaint resolution process (CRP)." CDE and Tulare Education fault the FAC's failure to allege that Student was denied a FAPE, a necessary element of an IDEA claim. As such, CDE and Tulare Education conclude that this Court lacks subject matter jurisdiction over Student's claims.

Student responds that he need not allege denial of a FAPE to support a claim under IDEA, which "confers many rights other than FAPE including the right to educational records."

### *F.R.Civ.P. 12(b)(1) Motion Standards*

F.R.Civ.P. 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction. Fundamentally, federal courts are of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 341 (1994). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Limits on federal jurisdiction must be neither disregarded nor evaded. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396 (1978). After a party challenges subject matter jurisdiction, the non-moving party bears the burden to establish that subject matter jurisdiction exists. *Kokkonen*, 511 U.S. at 377, 98 S.Ct. 2396. If a plaintiff fails to demonstrate "whatever is essential to federal jurisdiction," a court "must dismiss the case, unless the defect be corrected by amendment." *Smith v. McCullough*, 270 U.S. 456, 459, 46 S.Ct. 338 (1926).

### *Exhaustion Of Administrative Remedies*

CDE and Tulare Education argue that by equating the missing emails to "educational records" to be maintained under 34 C.F.R. § 99.6, the FAC alleges a state FERPA violation to warrant a written complaint with the Family Policy Compliance Office ("FPCO") of the U.S. Department of Education. 34 C.F.R. § 99.63 provides: "A parent or eligible student may file a written complaint with the Office regarding an alleged violation under the Act and this part." CDE and Tulare Education note that FPCO has "an enforcement procedure" under applicable regulations 34 C.F.R. §§ 99.60 through 99.67 whereas IDEA provides no enforcement or remedy for FERPA violations. 34 C.F.R. §99.67 enumerates enforcement remedies to: "(1) Withhold further payments under any applicable program; (2) Issue a complaint to compel compliance through a cease-and-desist order; or (3) Terminate eligibility to receive funding under any applicable program."

The "established doctrine" is that "administrative remedies must be exhausted prior to judicial review of administrative action." *U. S. v. Consolidated Mines & Smelting Co.,* 455 F.2d 432, 438 (9th Cir. 1971). CDE and Tulare Education note that under IDEA, federal court jurisdiction does not attach until a final administrative decision. *See* 20 U.S.C. § 1415(i)(1)(A). "Judicial review under the IDEA

is ordinarily available only after the plaintiff exhausts administrative remedies." *Doe By and Through Brockhuis v. Arizona Dept. of Educ.,* 111 F.3d 678, 680-681 (9th Cir. 1997).

CDE and Tulare education further criticize the FAC's failure to allege denial of a FAPE under IDEA to invoke federal court jurisdiction. CDE and Tulare Education note that to make a claim against an educational agency for a duty to provide a FAPE, parents must first address the issue in a due process proceeding. A fellow district court explained:

> Prior to commencing a state or federal court action seeking relief available under the IDEA, the aggrieved party must first exhaust available administrative remedies. 20 U.S.C. § 1415(l). This exhaustion requirement applies in all cases where a plaintiff alleges statutory or constitutional claims in addition to an IDEA claim, including those cases seeking relief (such as money damages) that is unavailable under the IDEA. *Polera v. Bd. of Educ., of the Newburgh Enlarged City School District*, 288 F.3d 478, 488 (2d Cir.2002). Even if a plaintiff alleges claims solely pursuant to provisions other than the IDEA, administrative remedies must be first pursued if the claim is one that seeks relief for an alleged failure to provide appropriate educational services. *Polera,* 288 F.3d at 488-89; *Sabur v. Brosnan*, 203 F.Supp.2d 292, 298 (E.D.N.Y.2002) (exhaustion requirement applies to Section 1983 claims seeking relief available under the IDEA); see 20 U.S.C. § 1415(1). The failure to exhaust administrative remedies deprives a court of subject matter jurisdiction.

*Vultaggio ex rel. Vultaggio v. Board of Educ., Smithtown Central School Dist.*, 216 F.Supp.2d 96, 103-104 (E.D.N.Y. 2002).

Student contends that he makes no FAPE claim in that he alleges CDE failed in its duty to enforce IDEA "by finding the e-mails withheld by [Tulare Education] were not considered 'educational records' that were maintained by the educational agency." Student notes that he exhausted administrative remedies by filing a compliance complaint with CDE pursuant to state CRPs under 34 C.F.R. §§ 300.151-300. 153. Student argues that he does not make a FERPA claim and that his mere reference to 34 C.F.R. § 99.6 ("educational records") does not characterize his claim as a FERPA violation. Student points to the definition of "education records" under 34 C.F.R. § 300.611(b): "Education records means the type of records covered under the definition of "education records" in 34 CFR part 99 (the regulations implementing the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. 1232g (FERPA))." Student notes that he "preceded under 34 C.F.R. § 300.611 which unlike FERPA only applies to agencies" who accept IDEA funding, such as Tulare Education.

This Court agrees that CDE and Tulare Education attempt to mischaracterize Student's claim as a FERPA violation or an unexhausted IDEA claim. CDE reached a final administrative action with its

May 19, 2008 reconsideration report which directed that "[a]ny further disagreement with the report can be appropriately addressed in a court of competent jurisdiction." CDE and Tulare Education fail to point where else Student was required to exhaust administrative remedies given CDE's direction to "a court of competent jurisdiction" and lack of meaningful explanation that such direction is inapplicable. As such, attention turns to whether Student's claims are actionable under IDEA.

### CDE And Tulare Education's F.R.Civ.P. 12(b)(6) Motion

CDE and Tulare Education further attack the FAC under F.R.Civ.P. 12(b)(6) in that "no private right of action exists under IDEA with respect to complaint resolution procedures provided in regulations." CDE and Tulare Education equate Student's claims as an appeal of CDE's determination in a CRP to render the claims "not actionable under the IDEA."

Student responds that CDE and Tulare Education erroneously assert, without citation to binding authority, that this Court is unable to hear appeals from state complaint resolution procedures.

*F.R.Civ.P. 12(b)(6) Standards*

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). F.R.Civ.P. 12(b)(6) dismissal is proper when "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102 (1957).

In resolving a F.R.Civ.P. 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is "free to ignore legal

9

conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted). A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). With these standards in mind, this Court addresses CDE and Tulare Education's challenges to the merits of Student's claims.

***Private Action***

CDE and Tulare Education note that although IDEA provides for judicial review of findings and decisions made pursuant to an impartial due process hearing under 20 U.S.C. § 1415(i)(2)(A), that statute "is silent regarding any private right of action relating to complaint resolution process." CDE notes a similar silence with the IDEA regulations to conclude that Student "has no private right of action relating to complaint resolution procedures." *Compare* 34 C.F.R. § 300.516 and 36 C.F.R. §300.151-300.153.

CDE and Tulare Education point to *Virginia Office of Protection*, 262 F.Supp.2d at 659, where a fellow district court explained:

> Although the IDEA expressly creates a private right of action for those aggrieved by the due process procedure, it does not give the same right to those participating in a CRP. *See* 20 U.S.C. § 1415(i)(2)(A). Not only was this intentional on the part of the IDEA's drafters, but it makes sense in the context of the two-tiered review system Congress created. In other words, the complaint resolution process is designed to be an informal forum for review. There is no requirement that the proceeding be recorded in anticipation of court scrutiny. Any interested party is permitted to participate, and the parties' procedural protections are minimal at best. In effect, the CRP is similar to an informal settlement conference. As such, it is intended to serve as a forum by which parties can meet and confer without the interference of the courts.

The court opined that "20 U.S.C. § 1415 does not create a private cause of action by which to challenge" a CRP. *Virginia Office of Protection*, 262 F.Supp.2d at 660.

Student responds that federal courts have heard appeals from CRPs. Student points to

*Chistopher S. v. Stanislaus County Office of Ed.*, 384 F.3d 1205 (9th Cir. 2004), where three autistic students pursued a state CRP to address a shortened school day. In *Christopher S.*, 384 F.3d at 1213, the Ninth Circuit held:

> In sum, we hold that the Students sufficiently exhausted their administrative remedies because they are challenging a blanket decision to shorten the school day for autistic students, one made outside the IEP process; because Rita S.'s administrative complaint put the state on notice of the issue; and because determining whether lunch and recess may be counted as instructional time in this case does not require administrative expertise.

Student argues that *Christopher S.* is analogous in that he filed a compliance complaint against Tulare Education, "followed it through to completion," and put the "state on notice" of Tulare Education's noncompliance with IDEA.

Student further points to *Beth V. v. Carroll*, 87 F.3d 80, 88 (3rd Cir. 1996), where the Third Circuit Court of Appeals held that disabled students had an express right of action under IDEA to address state failure to investigate and timely resolve IDEA claims: "We note furthermore that our holding is consistent with Congress' view that private suits are integral to enforcement of IDEA." Student argues that he makes a similar claim here that "CDE failed to investigate" his IDEA claim.

Student criticizes CDE and Tulare Education's reliance on *Virginia Office of Protection* in that the district court there compared complaint resolution proceedings to settlement proceedings. Student notes that complaint resolution proceedings in California differ from the less formal Virginia proceedings at issue in *Virginia Office of Protection*. Student notes the Ninth Circuit's "higher deference on complaint resolution procedures. "Although different, a CRP is no less a proceeding under § 1415 than is a due process hearing." *Lucht v. Molalla River School District*, 225 F.3d 1023, 1029 (9th Cir. 2000).

This Court agrees with Student that the appellate court authorities cited by Student are more compelling than the district court decision on which CDE and Tulare Education relies. CDE and Tulare Education point to no binding authority to deny Student a private right of action. In fact, CDE apparently recognized Student's private right of action given it direction in its May 19, 2008 reconsideration report that "[a]ny further disagreement with the report can be appropriately addressed in a court of competent jurisdiction." CDE cannot at the administrative level indicate that a court action

is available and later before a court indicate it is not. CDE and Tulare Education fail to substantiate the absence of a private action for Student.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DENIES CDE and Tulare Education F.R.Civ.P. 12(b)(1) and 12(b)(6) dismissal; and
2. ORDERS CDE and Tulare Education, no later than January 16, 2009, to file and serve an answer to the FAC.

IT IS SO ORDERED.

Dated:   January 5, 2009                    /s/ Lawrence J. O'Neill
                                    UNITED STATES DISTRICT JUDGE