**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| S.A. a minor by and through his parents, and guardian ad litem, L.A. and M.A., <br><br> Plaintiff, <br><br> vs. <br><br> TULARE COUNTY OFFICE OF EDUCATION and CALIFORNIA DEPARTMENT OF EDUCATION, <br><br> Defendants. <br> _____ / | CASE NO. CV F 08-1215 LJO GSA <br><br> **ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** (Docs. 59, 60) |

**INTRODUCTION**

Defendant California Department of Education ("DOE") and plaintiff S.A. ("Student") filed cross-motions for summary judgment on Student's claim that defendant Tulare County Office of Education ("TCOE") failed to produce educational records properly and California DOE erroneously ruled that TCOE properly produced the records. In addition, TCOE objected to Student's attorneys' fees request. The parties' motions pose the following questions of law: (1) Are emails "education records" and, if so, in what form must a public school produce emails to comply with the procedural safeguards of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1232g(a)(4)(A) and 34 C.F.R. §300.613?; and (2) Is Student entitled to an award of attorney's fees and, if so, in what amount? Having considered the parties arguments, this Court rules in favor of California DOE and against Student to find that California DOE correctly concluded that emails that were not maintained in Student's permanent file by TCOE were not "education records" within the meaning of the IDEA. The Court further finds that Student is entitled to a partial award of attorneys' fees for Student's limited successful representation in the compliance complaint, and awards Student $2,791.27 in attorneys' fees and costs.

**UNDISPUTED FACTS**

Student is a 10-year old boy who is eligible for, and has received, special education services due to his autism and speech and language delay. Student and his parents live within the Exeter Union Elementary School District, which is a part of the Tulare County Special Education Local Plan Area. TCOE acts as the administrative head of the Special Education Local Plan Area.

**Student's Request For Records**

On July 10, 2007, Student sent a letter to TCOE requesting "a copy of any and all electronic mail sent or received by the Department concerning or personally identifying" Student. Administrative Record ("AR") at 90.[1] TCOE responded to Student on July 17, 2007, indicating that it received Student's request and was "currently in the process of checking all emails with a variety of staff members, some of whom are on vacation." AR at 92. TCOE indicated that it would provide the requested information by July 27, 2007 and notified Student that he would be charged 5cents per page for each copy provided and that Student was expected to provide payment prior to mailing. *Id*. Student responded with a July 23, 2007 letter that reads in pertinent part:

> We look forward to your production of documents on July 27, 2007, and *further request that you provide the email documents in their native file format rather than printed pages*. Therefore, please provide electronic copies of the requested e-mails in the electronic version used to prepare the document.

AR at 94. In a July 25, 2007 response, TCOE sent Student hard copies of emails that had been printed and placed in Student's permanent file. TCOE advised Student that "pursuant to your correspondence dated July 23, 2007 requesting that the emails be sent electronically, *the enclosed emails could not be sent electronically as they have been purged and are made only available as hard copies within the file*." AR at 96. (emphasis added). Student's mother sent an email to TCOE, to request again that TCOE forward all electronic records pertaining to Student as emails or placed on a compact disc in native file format. AR at 86, 98. TCOE did not respond to this request.

**Compliance Complaint**

On February 6, 2008, Student filed a compliance complaint with California DOE to allege two

---

[1] For the sake of clarity, this Court will select one citation for those documents that are duplicated multiple times in the administrative record and declarations.

2

causes of action against TCOE: (1) failure to provide a full and complete copy of all emails concerning or personally identifying Student pursuant to its obligation under California Code of Education §56504; and (2) unlawful destruction of Student's records without parental notification or consent in violation of 34 C.F.R. §300.624(a) when it unilaterally "purged" original electronic files. AR at 79-85.

In its April 1, 2008 Compliance Complaint Report, amended on April 24, 2008, California DOE found that TCOE was in compliance in count one, but out of compliance in count two. As to count one, California DOE concluded:

> The COE failed to meet the requirements of EC Section 56504. The e-mails regarding the student requested by the Complainant are considered pupil records in hard copy format and subject to the requirement of EC Section 56504 and required to be provided within five business days upon receipt of the request. The Complainant's request was dated July 10, 2007, and the COE's letter to the Complainant stated that they would be providing the documents on July 27, 2009. **The COE is out of compliance.**

AR at 31, 39 (emphasis in original). As to count two, California DOE concluded:

> The COE provided hard copies of the student's records. The Complainant acknowledged receiving a "stack of documents containing e-mails with dates ranging from 2006 through 2007." The COE is not required to notify the Complainant before purging e-mails related to the student as the e-mails are not considered "educational" records" that are "maintained" by the educational agency under 34 CFR Section 99.6. **The COE is in compliance.**

AR at 32, 40 (emphasis in original).

Student filed a request for clarification and reconsideration of California DOE's Compliance Complaint Report. AR at 4-7. In the request for clarification and reconsideration, Student asked whether California DOE determined all records requested by Student were produced. In addition, Student sought reconsideration to determine whether TCOE had destroyed requested records and to declare that TCOE was out of compliance for failing to inform Student's parents that Student's records were to be purged. In response to Student's request for clarification and reconsideration, California DOE issued a report that found no inconsistencies with its prior findings. AR at 1.

On August 22, 2008, Student sent a letter to TCOE demanding attorneys fees for the successful claims in the Compliance Complaint. Declaration of Drew Massey ("Massey Decl."), Exhibit I.

**PROCEDURAL HISTORY**

Student initiated this action on August 15, 2008, and proceeds on his first amended complaint

("FAC") to allege: (1) A first cause of action against TCOE, claiming that TCOE failed to provide Student's complete "education record" in violation of federal and state law by failing to provide all emails regarding Student and destroying them without parental notification or consent in violation of 34 C.F.R. § 300.624; (2) A second cause of action against California DOE to: (a) reverse California DOE's findings that emails are not "education records" to be maintained by the educational agency and that TCOE was in compliance; and (b) require California DOE to take "appropriate corrective actions"; and (3) A third cause of action against TCOE to reimburse attorney fees not less than $5,462.64 for "successful prosecution of the compliance complaint." The FAC seeks: (1) Reversal of California DOE's decision; (2) Findings that TCOE violated federal and state laws by failing to produce emails that were Student's "education records" to be "maintained" under 34 C.F.R. § 99.3; (3) An order that TCOE provide Student's existing records which should have been produced pursuant to Student's initial July 10, 2007 request; (4) An order that TCOE notify parents when it intends to destroy Student's "education records"; and (5) An award of $5,462.64 attorney fees for "successful prosecution of the compliance complaint."

On August 19, 2009, Student and California DOE filed cross-motions for summary judgment of Student's claims (Docs. 59,60). On the same day, TCOE filed a "Motion to Object to Plaintiff's Demand for Attorneys' Fees in the Amount of Not Less than $5,462.64." (Doc. 63). California DOE and TCOE opposed Student's motion on August 28, 2009. Student opposed California DOE's and TCOE's motions on the same day. California DOE filed a response on September 3, 2009. Student replied on September 4, 2009. TCOE replied on September 8, 2009. Having considered the parties arguments, the administrative record, the declarations, and the judicially-noticeable facts, this Court finds these motions suitable for a decision without a hearing. Accordingly, this Court VACATES the September 24, 2009 motion hearing, pursuant to Local Rule 78-280(h) and issues the following order.

## DISCUSSION

### Summary Judgment Standards

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of

4

material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing of sufficient evidence to establish an essential element of the nonmoving party's claim, and on which the non-moving party bears the burden of proof at trial. *Id*. at 322. "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quoting Fed. R. Civ. P. 56(e)).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968); *T.W. Elec. Serv.*, 809 F.2d at 631. The nonmoving party must "go beyond the pleadings and by her own affidavits, or by depositions, answer to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Fed. R. Civ. P. 56(e) requires a party opposing summary judgment to "set out specific facts showing that there is a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988).

**Failure to Provide Email Records In Electronic Format**

The parties agree that TCOE must provide Student with "education records," pursuant to the IDEA, 20 U.S.C. §1232g(a)(4)(A) and 34 C.F.R. §300.613, and California Education Code section 56504. The parties further agree that an email may qualify as an "education record" and that for an email

that is an education record, a school district must comply with state and federal statutes and regulations related to the procedures for education records. The parties dispute, however, to what extent email an qualifies as an "education record." In addition, the parties dispute the format in which TCOE must provide an email "education record."

Student maintains that all emails that specifically identify him, whether printed or in electronic format, are "education records." Because they are "education records," Student contends, TCOE must notify parents and gain their consent prior to destroying any emails that specifically identify Student. In addition, Student contends that TCOE must provide emails in their native file format for inspection.

California DOE does not dispute that emails that qualify as "education records" must be provided to parents upon request, and parents are entitled to notification and consent before such emails are destroyed. California DOE asserts, however, that not all emails that personally identify Student are "education records." California DOE argues that only those emails that personally identify a student and are "maintained" by the educational agency are "education records" pursuant to the IDEA. California DOE contends that TCOE only "maintains" those emails that are printed out and placed in Student's permanent file and that TCOE maintains no emails in electronic format. Accordingly, California DOE concludes that TCOE properly produced Student's education records, because TCOE provided all emails that personally identified Student and were maintained in Student's file. In addition, California DOE contends that TCOE properly provided the email education records in the format they were maintained–in this instance, in hard-copy format–and is not required to maintain electronic documents in their native file format.

Student replies that all emails are "maintained" in TCOE's electronic mail system, and are maintained in the inboxes of the recipients. Student contends that all emails can be located on TCOE's electronic storage system through the use of information technology, even those emails that were previously deleted. Based on this premise, Student contends that TCOE must produce all emails that personally identify Student. In addition, Student asserts that because emails are "maintained" on TCOE computers, TCOE must produce emails in the native file format for inspection.

The Court begins its analysis with the statute. The IDEA specifies that an "education record" is the type of record defined in the regulations implementing the Family Educational Rights and Privacy

Act ("FERPA"). 34 C.F.R. 300.611(b). In turn, FERPA defines "education records" as those:

> records, files, documents, and other materials which--
> (i) contain information directly related to a student; and
> (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution.

20 U.S.C. §1232g(a)(4)(A); 34C.F.R. §300.613(b). The term "education record" does not include, *inter alia*, "records of instructional, supervisory, and administrative personnel and educational personnel ancillary thereto which are in the sole possession of the maker thereof and which are not accessible or revealed to any other person except a substitute." 20 U.S.C. 1232g(a)(4)(B)(i); *see also*, 34 C.F.R. § 99.3 (education records do not include those records "that are kept in the sole possession of the maker, are used only as a personal memory aid, and are not accessible or revealed to any other person except as a temporary substitute for the maker of the record.").

The plain language of the statute and regulation that define "education records" is consistent with California DOE's interpretation that only those emails that both are maintained by the educational institution and personally identify Student are educational records. The statute, 20 U.S.C. §1232g(a)(4)(A), and the regulation, 34 C.F.R. §99.3, include the conjunction "and" between the two requirements. As conjunctive phrases, the statute and regulation require an email to satisfy both prongs to be an education record. Thus, an email is an education record only if it *both* contains information related to the student *and* is maintained by the educational agency. Conversely, an email that is not maintained by the educational agency is not an education record.

Student asserts that "e-mails, whether printed and in hard copy or in electronic format, which specifically reference him are 'educational [sic] records' and must be provided pursuant to the IDEA's regulations." Student's Memo., 5. Student's position erroneously ignores the statutory requirement that an email must be also be maintained. Thus, emails, whether in hard copy or in electronic format, may be education records so long as the educational institution maintains them.

In his interpretation of the statute, and in this motion, Student seeks to compel TCOE to maintain all emails that identify him. This position is not supported by the plain language of the statute or regulations, and places the proverbial cart before the horse. The definition of an education record does not direct an educational agency to maintain a record that identifies Student. Contrary to Student's

1  assertion, and as discussed above, only a record that, *inter alia*, is maintained by the educational
2  institution meets the definition of an education record. Student points to no provision that requires an
3  educational institution to maintain an email–or any other record–based solely on the fact that it contains
4  personally identifiable information about a student.[2] Accordingly, Student's unpersuasive interpretation
5  of the statute is untenable. As set forth above, an email is an education record only if it personally
6  identifies Student and is maintained by the educational institution.

7  The parties dispute whether emails containing information that personally identifies Student were
8  "maintained" by TCOE. Student argues that TCOE "maintains" all email documents that are kept in a
9  central email server or that exist in the individual email inboxes of TCOE staff. California DOE points
10 out that Student asserts that TCOE maintains emails in a central email server and individual email
11 inboxes "without substantiation." California DOE, Opp., 4. California DOE argues that Student "cannot
12 state that the emails were in fact maintained. This is a factual issue that must be established without
13 dispute in order for this court to consider it in making any determination regarding the application of the
14 law." *Id*. In addition, California DOE submits that TCOE "maintained" only those emails that were
15 printed out and placed in a Student's file in hard-copy format. Neither party attempts to define the term
16 "maintain" through statute, regulation or case law.

17 In *Owasso Indep. Sch. Dist. No I-011 v. Falvo*, 534 U.S. 426 (2002), the United States Supreme
18 Court interpreted the definition of the word "maintain" under FERPA. In ruling that peer-graded
19 assignments are not "maintained" as education records within the meaning of FERPA, the Court
20 reasoned:

> The ordinary meaning of the word "maintain" is "to keep in existence or continuance; preserve; retain." Random House Dictionary of the English Language 1160 (2d ed. 1987). Even assuming the teacher's grade book is an education record–a point the parties contest and one we do not decide here–the score on a student-graded assignment is not "contained therein," §1232g(b)(1), until the teacher records it. The teacher does not maintain the grades while students correct their peers' assignments or call out their own marks. Nor do the student graders maintain the grades within the meaning of §1232g(a)(4()a). *The word "maintain" suggests FERPA records will be kept in a filing cabinet in a records room at the school or on a permanent secure database*, perhaps

---

[2] Educational institutions and agencies are required to maintain certain records. For example, FERPA and the IDEA require educational institutions to maintain a record of each request for access to and each disclosure of personally identifiable information from the education records of each student. 34 C.F.R. §99.32(a)(1); 34 C.F.R. §300.614. Other regulations require an educational agency to maintain a student's final grades, attendance records, and applicable health records.

8

>even after the student is no longer enrolled. The student grades only handle assignments for a few moments as the teacher calls out the answers. It is fanciful to say they maintain the papers in the same way the registrar maintains a student's folder in a permanent file.

*Owasso*, 534 U.S. at 432-33 (emphasis added). The Court further considered the meaning of the term "maintain" within the context of the overall statutory scheme:

>FERPA, for example, requires educational institutions to "maintain a record, kept with the education records of each student." § 1232g(b)(4)(A). This record must list those who have requested access to a student's education records and their reasons for doing so. Ibid. The record of access "shall be available only to parents, [and] to the school official and his assistants who are responsible for the custody of such records." Ibid.
>
>Under the Court of Appeals' broad interpretation of education records, every teacher would have an obligation to keep a separate record of access for each student's assignments. Indeed, by that court's logic, even students who grade their own papers would bear the burden of maintaining records of access until they turned in the assignments. We doubt Congress would have imposed such a weighty administrative burden on every teacher, and certainly it would not have extended the mandate to students.
>
>Also FERPA requires "a record" of access for each pupil. This single record must be kept "with the education records." This suggests Congress contemplated that *education records would be kept in one place with a single record of access*. By describing a "school official" and "his assistants" as the personnel responsible for the custody of the records, *FERPA implies that education records are institutional records kept by a single central custodian, such as a registrar, not individual assignments handled by many student graders in their separate classrooms.*

*Id*. at 434-45 (emphasis added).

In applying these considerations to the instant case, the Court finds that California DOE correctly determined that emails that are not in Student's permanent file are not "maintained" by TCOE. Emails, like assignments passed through the hands of students, have a fleeting nature. An email may be sent, received, read, and deleted within moments. As such, Student's assertion–that all emails that identify Student, whether in individual inboxes or the retrievable electronic database, are maintained "in the same way the registrar maintains a student's folder in a permanent file"–is "fanciful." *Owasso*, 534 U.S. at 433. Like individual assignments that are handled by many student graders, emails may appear in the inboxes of many individuals at the educational institution. FERPA does not contemplate that education records are maintained in numerous places. As the Court set forth above, "Congress contemplated that education records would be kept *in one place with a single record of access*." *Id*. at 434 (emphasis added). Thus, California DOE's position that emails that are printed and placed in Student's file are

"maintained" is accordant with the case law interpreting the meaning of FERPA and the IDEA. *Id.* ("The word 'maintain' suggests FERPA records will be kept in a filing cabinet in a records room at the school or on a permanent secure database.").

This analysis applies to Student's second claim against TCOE in the compliance complaint. Student argued that TCOE unlawfully "purged" emails without the notice and consent of Student's parents. Pursuant to 34 C.F.R. §300.624, TCOE "must inform parents when personally identifiable information collected, maintained, or used under this part is no longer needed to provide services to the child." Student's argument that TCOE maintained emails electronically is unsubstantiated. In addition, Student's argument that TCOE "maintains" emails in inboxes and TCOE's server also fails. Accordingly, Student has failed to demonstrate that TCOE purged any emails that personally identify Student and that was maintained by TCOE.

Pursuant to the applicable statute and regulation, TCOE was required to provide for inspection only those emails that personally identify Student and are maintained by TCOE. Student offers no evidence that TCOE failed to provide for inspection emails that were maintained in Student's file. Student admits that TCOE provided a "stack" of emails from 2006 and 2007 that were printed out and kept in Student's file. Moreover, the evidence that TCOE maintains Student's records in hard copy in Student's permanent file is not controverted. Student provides no evidence that TCOE maintains records electronically.[3] Because TCOE was obligated to provide for inspection education records, *see,* 34 C.F.R. §300.613, and the evidence supports California DOE's position that TCOE provided Student with the emails that TCOE maintained, this Court upholds California DOE's conclusion that TCOE was compliant with the applicable state and federal education laws. Accordingly, Student's first and second claims fail, and California DOE is entitled to summary judgment in its favor.

///

///

---

[3] This interpretation does not preclude or prohibit an educational institution from maintaining education records on an electronic database; however, questions related to electronic maintenance of records are inapplicable to the instant case. The non-controverted evidence demonstrates that TCOE only maintains records in hard-copy format. Thus, the Court does not reach the question of whether an educational institution should provide electronic records in their native file format if they are maintained electronically.

10

**Attorneys Fees**

**Introduction**

Next, Student moves for summary judgment on its claim against TCOE for attorneys fees. Student contends that he is entitled to recover attorneys fees for the successful prosecution of the compliance complaint filed with the California DOE. Pursuant to 20 U.S.C. 1415(i)(3)(B)(l), this Court "in its discretion, may award reasonable attorney's fees as part of the costs...to a prevailing party who is the parent of a child with a disability." Successful plaintiffs are entitled to attorneys' fees and costs attributable to an administrative proceeding. *McSomebodies v. Burlingame Elementary Sch. Dist.*, 897 F.2d 974 (9th Cir. 1989).

Student submits that he incurred $5,582.54 in attorneys fees and costs for the successful prosecution of the compliance complaint. This total, according to the billing sheet submitted as Exhibit J to the Massey Declaration, is the sum of: (1) 3.1 hours by Timothy A. Adams ("Mr. Adams") at an hourly rate of $225; (2) 25.6 hours worked by Jenna Leyton ("Ms. Leyton") at an hourly rate of $175; (3) .4 hours of work by a person with the initials "SAT," who charged an hourly rate of $175; and (4) costs for postage, legal research, and copies in the amount of $335.04.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Riverside v. Rivera*, 477 U.S. 561, 568 (1986) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "This figure, commonly referred to as the 'lodestar,' is presumed to be the reasonable fee." *Id*. To support the lodestar calculation, the prevailing plaintiff must submit documentary evidence detailing the number of hours spent and how it determined the hourly rate requested. *Hensley*, 461 U.S. at 433. After the Court calculates the lodestar, and in rare and exceptional cases, the Court may adjust the lodestar...based on factors not subsumed in the initial calculation of the lodestar." *Van Gerwen*, 214 F.3d at 1045; *but see*, 20 U.S.C. §1415(i)(3)(C) (lodestar fee may not be increased for claims under the IDEA).

**Hourly Rate**

The Court begins its analysis by determining a reasonable hourly fee. Attorney's fees are to be calculated "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. §1415(i)(3)(C); *see also*, *Blum v. Stenson*, 465 U.S.

886, 895 (1984). The relevant community is the forum in which the district court sits. *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1991); *see also, Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997) (applying the prevailing rate for the Sacramento community to an attorney whose practice was based in San Francisco). This Court sits in the Eastern District of California, Fresno division. Thus, the relevant community is Fresno, California. "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

To set forth and substantiate the hourly rates charged, Student submits declarations of Mr. Adams, Heather S. Zakson ("Ms. Zakson"), Shannyn C. Riba ("Ms. Riba"), and Elizabeth F. Eubanks ("Ms. Eubanks"). Mr. Adams, an attorney with eight years of experience who has prosecuted over 100 compliance complaints, charged an hourly rate of $225. Ms. Leyton, an attorney with one-year of legal experience, and the person who performed the bulk of the work in this matter, charged an hourly rate of $175. Ms. Zakson, an attorney with six years of experience in education law, charges $300 per hour. Ms. Riba and Ms. Eubanks, both attorneys with one year of experience, charge $275 per hour. Each attorney submits that their hourly rates are either at or below the prevailing rate for the legal community. In opposition, TCOE submits a declaration by Nicole Misner, who declares that the prevailing hourly rate for an eight-year attorney in special education litigation is $250. Based on the aforementioned declarations, and considering that Mr. Adams charged below the prevailing community rate as established by TCOE, this Court finds that the hourly rates of $225 for Mr. Adams and $175 for Ms. Leyton are reasonable.

**Hours Expended**

Next, the Court considers the reasonableness of the hours expended. "In determining the appropriate lodestar amount, the district court may exclude from the fee request any hours that are 'excessive, redundant, or otherwise unnecessary.'" *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (quoting *Hensley*, 461 U.S. 424, 434). As set forth above, Student's attorneys expended a total of 29.1 hours to litigate the compliance complaint. TCOE does not set forth any serious arguments to contend that the hours expended are excessive, redundant or unnecessary. Accordingly, this Court finds that 29.1 total hours is a reasonable amount of hours to prosecute the compliance complaint.

**Lodestar Adjustment**

Pursuant to the statute, this Court may not increase the attorneys' fee award that is calculated according to the lodestar. 20 U.S.C. §1415(i)(3)((C) ("No bonus or multiplier may be used in calculating the fees awarded under this subsection). This Court has discretion, however, to adjust the lodestar calculation downward. The "most critical factor" in determining the reasonableness of a fee award under 20 U.S.C. §1415(i)(3)(B) "is the degree of success obtained." *Linda T. V. Rice Lake Area Sch. Dist.*, 417 F.3d 704, 708 (7th Cir. 2005) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Parents of a disabled child will be awarded only such attorneys fees as pertained to the successful portion of the petition. *Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 160-61 (3rd Cir. 1994). If "a plaintiff has achieved only partial or limited success, the product of hours expended on litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensely*, 461 U.S. at 436; *see also, Aguirre v. L.A. Uni. Sch. Dist.*, 461 F.3d 1114 (9th Cir. 2006) (ruling that *Hensely* degree-of-success standard applies to IDEA cases). "A reduced award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 416 U.S. at 440.

As set forth above, Student was successful in one of the two counts asserted against TCOE. California DOE found TCOE out of compliance with California Code of Education section 56504, which provides parents of students with disabilities the "right and opportunity to examine all school records of [their] child and to receive copies...within five business days after the request is made by the parent, either orally or in writing." As a public education agency, TCOE "must comply with a request for school records without delay...and in no case more than five business days after the request is made orally or in writing." Cal. Educ. Code section 56504.

Student was unsuccessful on the bulk of his arguments raised in the February 6, 2008 compliance complaint. Student's compliance complaint alleged two causes of action against TCOE: (1) failure to provide a full and complete copy of all emails concerning or personally identifying Student pursuant to its obligation under California Code of Education §56504; and (2) unlawful destruction of Student's records without parental notification or consent in violation of 34 C.F.R. §300.624(a) when it unilaterally "purged" original electronic files. In his first cause of action, Student argued that TCOE failed to provide all emails that personally identified Student. California DOE found that TCOE was

under no obligation to provide all emails–only those that were "educational records" because they were "maintained." California DOE's position on this matter led to its decision that TCOE was in compliance on Student's second cause of action; namely, that TCOE was under no obligation to notify Student's parents prior to purging emails that were not part of Student's file, because they were not educational records.

Student argues that he should recover the full amount of his attorneys' fees, because the issues arose out of a common core of facts. As set forth above, however, the Court does not consider whether the claims arose out of a common core of facts only. When claims arise out of a common core of facts, this Court considers the level of success obtained. *See, McCown*, 550 F.3d at 923. "The reasonableness of the fee is determined primarily by reference to the level of success achieved by the plaintiff." *Id.* at 922 (citing *Hensley*, 461 U.S. at 436). In its review of this motion, this Court must consider "the relationship between the amount of the fee awarded and the results obtained." *Hensley*, 461 U.S. at 437.

In the compliance complaint and resulting order on Student's motion for reconsideration, Student's "victory clearly fell short of his goal; therefore, it is unreasonable to grant his attorneys more than a comparable portion of the fees and costs requested." *McCown*, 550 F.3d at 925. Though this Court "need not be so mechanical as to divide the amount of fees and costs requested by the number of claims...the district court should take into account [Student's] limited success when determining a reasonable award." *Id*. Here, the Court finds that a reasonable award based on Student's limited success is 50% of the total fees and costs. Accordingly, this Court awards Student an award of $2,791.27 in attorneys' fees and costs for his partially-successful compliance complaint.

### Student's first cause of action against TCOE

The parties contemplated that Student's claims would be resolved on motion for summary judgment. While Student and California DOE moved for summary judgment, TCOE failed to moved move for summary judgment on its behalf. TCOE's inexplicable failure to abide by the February 25, 2009 Scheduling Order has placed the posture of this case in a unique procedural position. In his first cause of action, against TCOE, Student claims that TCOE failed to provide Student's complete "education record" in violation of federal and state law by failing to provide all emails regarding Student and destroying them without parental notification or consent in violation of 34 C.F.R. § 300.624.

Though this Court denies Student's summary judgment motion on Student's first cause of action, this Court cannot enter judgement in TCOE's favor without an outstanding request to do so.

For the reasons stated herein, this Court upheld California DOE's Compliance Compliant Report decision to find that TCOE was not required to provide Student with emails that TCOE maintained and Student provided no evidence that TCOE destroyed education records without parental notification or content. This Court's conclusions regarding Student's second cause of action against California DOE necessarily affect Student's first cause of action against TCOE. Accordingly, this Court is inclined to enter summary judgment against Student on his first cause of action against TCOE. *See Celotex Corp.*, 477 U.S. at 326 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence."). In its conclusion and order below, this Court shall allow Student an opportunity to oppose this Court's entry of summary judgment against him on his first cause of action against TCOE.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DENIES Student's summary judgment motion on his first claim against TCOE and second claim against California DOE;
2. GRANTS summary judgment in favor of California DOE and against Student on Student's second claim against California DOE;
3. GRANTS in part summary adjudication in favor of Student and against TCOE on Student's third claim for attorneys fees;
4. AWARDS Student $2,791.27 in attorneys' fees and costs for his partially-successful compliance complaint against TCOE; and
5. ORDERS Student to show cause, **no later than October 5, 2009**, why judgment should not be entered in favor of TCOE and against Student on Student's first cause of action.

IT IS SO ORDERED.

**Dated:   September 24, 2009**          /s/ Lawrence J. O'Neill
                                         UNITED STATES DISTRICT JUDGE